UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

UNITED STATES OF AMERICA                    :


   - against -                                              :          21 Cr. 692 (VEC)


JUAN FELIPE SANTIBANEZ CARDONA,

                                 Defendant.           :

------------------------------------------------------------------X


## SENTENCING MEMORANDUM OF LAW
## FOR JUAN FELIPE SANTIBANEZ CARDONA

                                                        John P. Buza
                                                        Konta, Georges, and Buza, P.C.
                                                        233 Broadway, Suite 900
                                                         New York, NY 10279
                                                         212-710-5166


                                         *Attorney for Juan Felipe Santibanez Cardona*


Dated: New York, NY
       November 5, 2024

# Konta, Georges, and Buza, P.C.
233 Broadway, 9th Floor
New York, NY 10279
212-710-5166 (Tel.)
212-710-5162 (Fax)
johnpbuza@aol.com

November 5, 2024

**VIA ECF AND MAIL**
The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

                Re:    **United States v. Juan Felipe Santibanez Cardona,**
                       **21 Cr. 692 (VEC)**

Dear Judge Caproni:

      Juan Felipe Santibanez Cardona's entire life was lived under the strong influence of powerful narcotics. He is a deeply intelligent person and a kind soul. However, he was born in difficult circumstances as his father was a notorious drug trafficker. Growing up with a father like he had, Mr. Santibanez Cardona was surrounded by illegal drugs. When he was still a child, he developed a powerful addiction to several different drugs, including cocaine, LSD, ecstasy, and ketamine. Mr. Santibanez's drug use was so prolific that he essentially has lived his entire adult life as a zombie. He has even been hospitalized twice because of drug abuse. Like many who have had their lives completely upended by dangerous narcotics, Mr. Santibanez Cardona made many mistakes in large part to feed his addiction. Chief among the mistakes made was participating in a conspiracy to sell the very drugs that were poisoning him. As a result, he is now stuck in one of the most hellish jails in the United States thousands of miles away from his home. This letter is respectfully submitted pursuant to Rule 32 of the Federal Rules of Criminal Procedure and sets forth several matters that Mr. Santibanez Cardona will raise to aid in the determination of an appropriate sentence, serving the interests of justice, and the sentencing goals of 18 U.S.C. § 3553(a).

      Mr. Santibanez Cardona was arrested while in Colombia on February 3, 2022, and was remanded on that same day to a Colombian jail. He was extradited to the Southern District of New York on July 19, 2023. On May 29, 2024, he pleaded guilty to a lesser included offense under Count 1 of the indictment, charging him with conspiracy to import 500 grams and more of cocaine

into the United States, in violation of 21 U.S.C. § 960(b)(2)(B)(ii).[1]  I respectfully submit that any sentence more than 60 months in prison would be greater than necessary to comply with the goals of 18 U.S.C. § 3553(a).  Mr. Santibanez Cardona has no criminal history prior to the instant offense.  The conduct that landed him before this Court for sentencing is the direct result of a drug addiction which stemmed from a lifetime of drug abuse.  The facts of this case, as sadly common as they are, together with Mr. Santibanez Cardona's personal characteristics and background, all suggest that a sentence of 60 months is appropriate.

## **BACKGROUND**

Juan Felipe Santibanez Cardona was born on June 27, 1987, in Dosquesbradas, Colombia, to Luis Orlando Santibanez and Mariela Cardona.[2]  As mentioned above, Mr. Santibanez Cardona's father was a notorious drug trafficker who was investigated by Interpol.[3]  His mother was a store clerk.[4]  He grew up with a brother and three half-siblings.[5]  He proudly worked for much of his entire life.  From 1996, when he was nine years old, through 2017, he worked countless odd jobs in various stores and restaurants.[6]

Despite trying to make the best of it, Mr. Santibanez Cardona's childhood was difficult.  From the age of five, his father would drink excessively, consume powerful narcotics, and would beat him and his mother.[7]  Mr. Santibanez Cardona even lost a tooth because of one of these attacks.[8]  Owing in large part to his father's alcoholism and drug use, Mr. Santibanez Cardona's parents eventually divorced when he was a still a child.[9]

Notwithstanding the trouble that his father inflicted on the young boy, Mr. Santibanez Cardona still loved him dearly.  It was when his father died of a heart attack at the age of 45 that Mr. Santibanez Cardona's life spiraled into full on drug addiction.[10]  At first, he dabbled with alcohol.[11]  He then began to socially use illicit drugs such as marijuana, cocaine, ecstasy, LSD and ketamine.[12]  Then in 2008, before he was even 20 years old, he began to consume drugs daily.[13]  He was ultimately hospitalized twice for drug abuse and went to a rehabilitation center in 2014.[14]

---

[1]  Mr. Santibanez Cardona was the first person to accept responsibility of all the co-defendants.
[2] Presentence Investigation Report Paragraph 73 hereinafter "PSR ¶ 73."
[3] *Id*.
[4] *Id*.
[5] *Id*. at 74.
[6] *Id*. at 101-107.
[7] *Id*. at 75.
[8] *Id*.
[9] *Id*. at 75.
[10] *Id*. at 79.
[11] *Id*. at 91
[12] *Id*.
[13] *Id*.
[14] *Id*. at 94-95; I am in possession of medical records from Colombia that corroborates this.  Because they are confidential, I do not want to file them herein, but I can provide them to the Court upon request and will have them at the sentencing hearing.

I respectfully submit that Mr. Santibanez Cardona's role within this conspiracy at its core comes from very poor decision making due to his drug abuse. I say this, not to offer an excuse for his decisions, but to offer an explanation as to how someone who is a fundamentally decent person can find themselves involved in such a nefarious activity. Mr. Santibanez Cardona is more than a junkie with a sad past and bad luck though. He is a good person capable of being a productive and contributing member of our society. The letters submitted on his behalf and written by people who know him best reveal his true nature.

Miriam Ocampo Henao, an 86-year old friend of Mr. Santibanez Cardona's family, describes him as a person with "...a noble heart, [] spirit of service,...and [is] hardworking..."[15] Maura Hermencia Orejuela De Calda, a former cooking teacher, writes that she "...love[s] him because he is good people, because he gives himself over to family and friends, and...because his characteristic is to do good deeds and to have good intentions toward others."[16] Manuela Garcia Cobo, a friend who studied gastronomy with Mr. Santibanez Cardona, describes his "...good attitude when facing adversity, and his constant desire to help his fellow man."[17] Marcello de Bartolomeo, a former employer, writes that Mr. Santibanez Cardona was an "...altruistic and dependable young man, with human qualities who exhibited interest and desire to learn."[18]

Indeed, all the letters submitted on Mr. Santibanez Cardona's behalf strike a similar tone: that Mr. Santibanez Cardona is a hard worker, a good person, and a caring friend, but whose life has been completely derailed by his drug addiction.[19] These letters reveal the true nature of Mr. Santibanez Cardona that I respectfully wish for the Court to know: a kind and good person in deep need of medical help. Most importantly, he is an individual who is ultimately worthy of a second a chance.

Most striking among the letters, however, are the ones written by Mr. Santibanez Cardona's immediate family. They are notable because they touch upon the true nature of Mr. Santibanez Cardona and why he is in the situation he is in. Mariela Cardona Orozco, Luz Angela Santibanez, and Luis Orlando Santibanez Cardona, his mother, sister, and brother, all write to express their love and support for Mr. Santibanez Cardona. Moreover, their letters corroborate that he became a drug addict early in life due to the corrosive effect that having a father who was a narcotics trafficker had on him and their family.[20] Lastly, I.S.. Mr. Santibanez's 17-year old daughter also writes to express her love and support for her father.[21]

---

[15] *See* Exhibit A- Letter from Miriam Ocampo Henao.
[16] *See* Exhibit B- Letter from Maura Hermencia Orejuelas De Caldas.
[17] *See* Exhibit C- Letter from Manuela Garcia Cobo.
[18] *See* Exhibit D- Letter from Marcello de Bartolomeo.
[19] *See* Exhibit E- Other Letters from friends and family.
[20] *See* Exhibit F- Letters from Mariela Cardona Orozco, Luz Angela Santibanez, and Luis Orlando Santibanez Cardona.
[21] *See* Exhibit G- Letter from I.S.

## THE APPROPRIATE SENTENCE

The Court is required to consider the factors set forth in Title 18 U.S.C § 3553(a) and to impose a sentence that is both reasonable and "sufficient, but not greater than necessary, to comply with the purposes" reflected by the subsections of § 3553(a). The probation department has recommended that the Court sentence Mr. Santibanez Cardona to a below-guidelines sentence of 180-months, however, after a review of his tragic life and circumstances, it is submitted that a sentence of 60-months imprisonment is appropriate, reasonable, and warranted in this case.

The Probation Department has calculated Mr. Santibanez Cardona's guidelines level as follows: the base offense level is 38 pursuant to U.S.S.G. §§ 2D1.1(a)(5) and 2D1.1(c)(1) because the offense involved at least 450 kilograms of cocaine. An additional two points are added pursuant to U.S.S.G. § 2D1.1(b) because firearms were possessed in connection with the offense.[22] A two-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a) and another one level reduction pursuant to U.S.S.G. § 3E1.1(b), brings Mr. Santibanez Cardona's Total Offense Level to 37, with a Criminal History Category of I, resulting in a Guideline Range of 210-to-262-months imprisonment.

Notably, Mr. Santibanez Cardona is indisputably the victim of the very same drugs he is accused of peddling. But for the crippling addiction that ruined his life, he probably never would have been involved in the instant conspiracy. While the conduct in the instant action is indisputably serious, substantial mitigation does also exist. Based on these facts, and together with the inhumane conditions at MDC, it is respectfully requested that the Court sentence him to a term of 60-months imprisonment.

**1) The nature and circumstances of the offense and the history and characteristics of the defendant (18 U.S.C. § 3553 (a)(1)):**

a. **Nature and circumstances of the offense**

The charge to which Mr. Santibanez Cardona pleaded guilty is undoubtedly a serious offense and he accepts full responsibility for his actions. There is, however, an undeniable reality that Mr. Santibanez Cardona is in this situation because he is a drug addict in need of treatment. After considering Mr. Santibanez Cardona's background and characteristics, it is clear that a sentence of 60 months incarceration would be sufficient, but not greater than necessary, to comply with the sentencing goals of 18 U.S.C. § 3553(a). Mr. Santibanez Cardona is not blaming others for his actions and takes full responsibility for the decisions he made, but it is simply beyond cavil that he became involved in the instant conspiracy only after his addiction spiraled out of control.

---

[22] Upon information and belief, there is no evidence that Mr. Santibanez Cardona himself ever possessed any firearms.

**b. History and characteristics of the defendant:**

Mr. Santibanez Cardona's formative years were filled with misfortune. His father's physical and emotional abuse, his parents' subsequent divorce, and his father's ultimate death during a formative time in his life put him on different trajectory than the rest of his family. His brother is a successful musician in Argentina.[23] One of his sisters works at a cosmetic company in Florida while another brother is a student in New York.[24] A third sister is even an NYPD Officer.[25][26] Meanwhile, Mr. Santibanez Cardona is in jail after having pled guilty to a federal narcotics offense. While Mr. Santibanez Cardona's background in no way excuses his involvement, nor in any way diminishes its seriousness, it does render his actions all the more understandable and provides substantial mitigation in determining an appropriate sentence that serves the ends of justice. To that end, as evidenced by the letters of support submitted on his behalf, Mr. Santibanez Cardona will have a supportive community to keep him on the proper path after he serves his sentence.

**2) The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant (18 U.S.C. § 3553(a)(2)(A)-(C)):**

Juan Felipe Santibanez Cardona is in this situation because he is a drug addict. There is no doubt that he would be – and still can be – a functioning and law-abiding member of society, like his siblings, if he had the tools necessary to combat his addiction and the right support system in place. Mr. Santibanez Cardona appreciates the serious nature of his crime and is deeply remorseful. Notably, he has been sober since his arrest in February 2022.[27]

Notably, Mr. Santibanez Cardona has not only had no infractions while incarcerated, but he has completed numerous programs, taught others while inside the MDC, and has maintained steady employment in the facility.[28] Owing to his strong command of English and Spanish, he even spends much of his time within MDC teaching English to other inmates and helping others in their attempts to get a G.E.D. Most notably, he was even commended by MDC for saving an officer who was attacked by another inmate.[29] As the PSR indicates, on January 5, 2024, Santibanez Cardona stopped an inmate from assaulting a female correctional officer.[30] Specifically, the inmate punched the female officer in the face and attempted to kick her, but Santibanez Cardona pushed the inmate away and transported the female officer to safety by

---

[23] *Id.* at 74
[24] *Id.*
[25] *Id.*
[26] Mr. Santibanez Carona's siblings in New York come from his father's relationship with another woman. He is estranged from these individuals as their mother does not want her children to associate with the children from his father's first marriage.
[27] *Id.*
[28] *See* Exhibit H- MDC Diplomas and MDC work history.
[29] See Exhibit I- Commendation from MDC
[30] *Id.*

moving her to an enclosed area.[31] MDC even gave him a financial reward for his conduct in the harrowing incident.[32]

As the Court can see, Mr. Santibanez Cardona's time at the MDC has been spent productively. However, he finds himself in a horrific situation and never wants to be away from his home and his family again. He is doing what little he can to prove that point to the Court. Unlike most inmates who are incarcerated near their home, Mr. Santibanez Cardona has been completely alone in a foreign country during this sad time in his life. He has not seen his family in close to two years. He has had limited visits from anyone. Simply put, his incarceration has been brutal. It is impossible to quantify how devastating this time has been for Mr. Santibanez Cardona. Sentencing him to 60 months in prison would provide sufficient punishment for the offense. The substantial time he has already spent in prison will forever deter him from engaging in any kind of illegal activity again because he understands the pain that his decisions can cause him and his family. In addition to the sentence he receives, he is going to suffer the collateral consequences of this conviction for the rest of his life. He will be deported from the United States once the sentence is served and would likely not be allowed to enter in the future.

Additionally, the Court is familiar with recent accounts of life at the MDC as well as the facility's persistent shortcomings over the years. See *United States v. Morgan*, No. 19 Cr. 209 (RMB) (S.D.N.Y. May 5, 2020), Dkt. 90, Tr. 12-15 (describing the MDC as "dirty," "infested with drugs," and plagued by violence); see also *United States v. Boyd*, No. 21 Cr. 486 (SHS) (S.D.N.Y. Feb. 3, 2022), Dkt. 74 (describing overcrowding, staffing issues, and lockdowns at the MDC); *United States v. Days*, No. 19 Cr. 619 (CM) (S.D.N.Y. Apr. 29, 2021), Dkt. 35, Tr. 19 (describing MDC conditions as "disgusting [and] inhuman as anything I've heard about any Colombian prison, but more so because we're supposed to be better than that"). The conditions during Mr. Santibanez Cardona's incarceration remain deplorable. His confinement has been characterized by the threats of unchecked violence and by long and frequent periods of lockdown, without access to showers, recreation, telephone, email, visitation, commissary, or adequate meals. As the president of the jail's union wrote in a memo last year, MDC staffing shortages have produced "abusive and inhumane" conditions "as inmates often receive meals untimely, have no access to hygiene products and or the ability to shower; and lack access to adequate medical care."[33] Simply put, pretrial incarceration was never intended to occur this way. Thus, I submit that the Court should give special consideration to the harsh circumstances of Mr. Santibanez Cardona incarceration and give it due credit in determining an appropriate sentence. Indeed, maggots were found in the inmates' meals, a person was murdered, a person was stabbed, and a person died of a heart attack just within the past few months. Mr. Santibanez Cardona has himself been beaten while incarcerated and needed to be hospitalized as a result of the beating.

---

[31] *Id*.
[32] *See* Exhibit J- Evidence of Financial Compensation.
[33] *See* Exhibit K- Letter by Brenda Barnwell, President of Union Representing staff at MDC Brooklyn.

**(3) The need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care or other corrective treatment in the most effective manner (18 U.S.C. § 3553(a)(2)(D)):**

Juan Felipe Santibanez Cardona would not be a convicted federal defendant before the Court for sentencing if he was not first a drug addict. Any sentence delivered by the Court should address this central truth. The primary goal of 18 § U.S.C. 3553(a) is to ensure that a federally convicted defendant does not re-offend. There is no question that the threat of prison acts as a deterrent for future criminal activity. However, Mr. Santibanez Cardona is not before the Court because he is a criminal in need of deterrence. Rather, he is a drug addict who has been battling demons for a long time now. The single most important and effective way to ensure that Mr. Santibanez Cardona is never before any court ever again is to ensure that he receives the treatment he desperately needs. Indeed, Mr. Santibanez Cardona has even taken steps to address his drug problems while incarcerated at MDC.[34]

## CONCLUSION

Mr. Santibanez Cardona understands the seriousness of his offense and is deeply regretful for his actions and remains especially remorseful to the Court. As a result of Mr. Santibanez Cardona's personal history and characteristics, the horrors associated with the MDC, and the incredibly harsh conditions that he has endured during his incarceration, the proposed sentence of 60 months incarceration is both reasonable and appropriate. Mr. Santibanez Cardona respectfully reserves the right to raise additional issues at the time of sentencing. The Court's time and consideration of this submission are greatly appreciated.

Respectfully submitted,

*John Buza*
John P. Buza, Esq.

---

[34] See Exhibit L- Letter from MDC showing enrollment in the Non-Residential Drug Abuse Program (NR DAP).